## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PRACTICEPROTECTION CASUALTY COMPANY, *formerly known as* DOCTORS DIRECT INSURANCE, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CENTER FOR GASTROINTESTINAL HEALTH S.C., *et al.*,<br><br>        Defendants. | Case No. 25-CV-00784-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court on two Motions to Dismiss: first, a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendant Veronica Douglas (Doc. 28) and joined by Defendants Vickie Franco, Efrain Franco, Melissa Porter, Robert Porter, and Center for Gastrointestinal Health, S.C. (Doc. 34, p. 1; Docs. 35, 36); and, second, a Motion to Dismiss on the basis of the *Brillhart* abstention doctrine filed by Defendant Center for Gastrointestinal Health, S.C. (Doc. 34). Having fully considered the issues presented, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 28) is **DENIED**, and the Motion to Dismiss based on the *Brillhart* abstention doctrine (Doc. 34) is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit involves a dispute over insurance coverage for a medical practice clinic in Illinois and underlying medical malpractice litigation. We begin with the medical malpractice claims for relevant background. On or about November 8, 2021, Efrain and Vickie Franco ("the Francos," who were spouses and are current Defendants in this action) brought suit against Defendants Kurt Sprunger, M.D.; Center for Gastrointestinal Health, S.C. (hereinafter "CGH," also a Defendant named in this action); Granite City Illinois Hospital Company, LLC, d/b/a Gateway Regional Medical Center; and Davol, Inc. in the Circuit Court for St. Clair County, Illinois. (Doc. 1, Ex. B); *Franco et al. v. Kurt Sprunger, M.D.*, *et al.*, Case No. 21L0672 (Ill. Cir. Ct. 2021). The Francos sought damages for injuries incurred on or about December 30, 2019, that they alleged were the result of Defendants' negligence in providing medical care to Vickie Efrain. (Doc. 1, Ex. B). On or about August 17, 2021, Veronica Douglas (also a current Defendant in this action) brought action against Sprunger, CGH, and Gateway Regional Medical Center in the Circuit Court for St. Clair County. (Doc. 1, Ex. B); *Douglas v. Kurt Sprunger, M.D.*, *et al.*, Case No. 21L0449 (Ill. Cir. Ct. 2021). Douglas sought damages for injuries she alleged she sustained while in the care of Defendants on or about March 2020. (Doc. 1, Ex. B). On or about March 29, 2022, Melissa and Robert Porter ("the Porters," who were spouses and are current Defendants in this action) brought suit against Sprunger, CGH, and Gateway Regional Medical Center in the Circuit Court for St. Clair County. (Doc. 1, Ex. B); *Porter et al. v. Kurt Sprunger, M.D.*, *et al.*, Case No. 22LA0263 (Ill. Cir. Ct. 2022). The

Porters sought damages for alleged injuries incurred by Melissa Porter on or about June 22, 2020. (Doc. 1, Ex. B). The Francos, the Porters, and Douglas all allege they were injured at Gateway Regional Medical Center, a medical practice in Granite City, Illinois, while in the care of Sprunger, CGH, and Gateway Regional Medical Center. (*See id.*).

Prior to the alleged injuries, Plaintiff PracticeProtection Casualty Company, formerly known as Doctor's Direct Insurance, Inc. (hereinafter "PracticeProtection"), issued a medical professional liability insurance policy to CGH, which operated a medical practice in Fairview Heights, Illinois. (Doc. 1, Ex. A). The Francos, the Porters, and Douglas alleged that their treating physician, Sprunger, was an employee and agent of both Gateway Regional Medical Center and CGH. (*See* Doc. 1, Ex. B). The insurance policy at issue in this suit, Policy No. E14-50415 (hereinafter the "Policy"), as Plaintiff PracticeProtection alleges, provided coverage from September 5, 2020, to September 5, 2021, which was renewed with effective dates of September 5, 2021, to September 5, 2022. (*See* Doc. 1, p. 3).

On February 11, 2025, two months before the instant suit was filed, CGH filed suit in the Circuit Court of St. Louis County, Missouri. (Doc 34, Ex. 1); *Center for Gastrointestinal Health v. The Hilb Group Central, LLC*, *et al.*, Case No. 25SL-CC01577 (Mo. Cir. Ct. 2025). CGH's Missouri Petition names as defendants The Hilb Group Central, LLC (an insurance broker) and Doctor's Direct Insurance, Inc. (the former name of current Plaintiff in this case, PracticeProtection), and brought three counts: breach of fiduciary duty against the broker (Count I); breach of contract

against PracticeProtection (Count II); and vexatious refusal to pay under the Policy in violation of MO. REV. STAT. §§ 375.296, 375.240 against PracticeProtection (Count III). (Doc. 34, Ex. 1).

Count II of CGH's Missouri Petition, the breach of contract claim, alleged that PracticeProtection initially provided a defense for the underlying malpractice suits brought by the Francos, the Porters, and Douglas, but later denied coverage, thereby breaching the insurance contract. (Doc. 34, Ex. 1). The Missouri Petition seeks a declaration that PracticeProtection is obligated to defend and indemnify CGH in the underlying Illinois malpractice suits. (Doc. 34, Ex. 1). CGH's Missouri suit does not name the Francos, the Porters, or Douglas as parties to that suit. (Doc. 34, Ex. 1). PracticeProtection filed a motion to dismiss the Missouri action on forum non conveniens grounds, arguing in part that the underlying tort claimants were necessary parties who cannot be joined in Missouri. (Doc. 39, Ex. 2). The Missouri court denied that motion on July 10, 2025. (Doc. 39, Ex. 3).

On April 30, 2025, PracticeProtection filed the instant declaratory judgment action in this Court, alleging diversity jurisdiction exists to establish federal subject matter jurisdiction. (Doc. 1). The Complaint names as defendants CGH and the five individual plaintiffs from the underlying Illinois state court malpractice suits: the Francos, the Porters, and Douglas. PracticeProtection seeks a declaration that the Policy does not provide liability insurance coverage for CGH with respect to the three underlying lawsuits pending in St. Clair County. (Doc. 1, pp. 6–8).

On June 17, 2025, Defendant Douglas filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 28). Defendants Efrain and Vickie Franco and Melissa and Robert Porter filed Motions to Join Douglas' Motion, which this Court granted on July 11, 2025. (*See* Docs. 35, 36, 37). Douglas argues in her Motion that Plaintiff PracticeProtection's principal place of business is in Illinois, and as such, complete diversity does not exist. (*See* Doc. 28). On June 25, 2025, CGH filed a separate Motion to Dismiss, joining Douglas' jurisdictional challenge and independently seeking dismissal under the *Brillhart* abstention doctrine. (Doc. 34). CGH contends that this Court should decline to exercise jurisdiction over the action because CGH's earlier-filed Missouri lawsuit presents the same coverage issues between substantially the same parties. (*See id.*). PracticeProtection opposes both motions. (*See* Docs. 38, 39).

LEGAL STANDARD

## I.    Federal Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, empowered only to decide "Cases" and "Controversies" under Article III of the Constitution. U.S. CONST. art. III, § 2; *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020). This limitation "confines federal courts to hearing only those disputes that are sufficiently concrete and presented in a form historically recognized as appropriate for judicial resolution." *Fox*, 980 F.3d at 1151. "Subject-matter jurisdiction is the first question in every case." *State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). A Rule 12(b)(1) motion challenges the court's power to hear the case. FED. R.

CIV. P. 12(b)(1); *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

Diversity jurisdiction exists under 28 U.S.C. § 1332(a) when the citizenship of every plaintiff is diverse from every defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. For purposes of diversity jurisdiction, a corporation is deemed a citizen of every state where it has been incorporated and of the state where it maintains its principal place of business. *See id.* § 1332(c)(1). A corporation's principal place of business "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This location is commonly referred to as the corporation's "nerve center." *Id.* "In practice, the principal place of business should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93. The test focuses on the location of corporate management and decision-making, not on where the bulk of a company's business activities occur or where the public perceives the company to be located. *Id.* at 92–93, 96.

Critically, "[f]actors dealing with day-to-day operating responsibilities" are to be disregarded in the nerve center analysis. *Chamberlain Mfg. Corp. v. Maremont Corp.*, 828 F. Supp. 589, 592 (N.D. Ill. 1993). As the Supreme Court emphasized, by way of example, even "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across

the river in New York, the 'principal place of business' is New York." *Hertz*, 559 U.S. at 96.

It is also firmly established that "the jurisdiction of the court depends upon the state of things at the time of the action brought," which is also referred to as the time-of-filing rule. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570−71 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)). The citizenship of the parties at the time the complaint is filed controls the diversity analysis, regardless of subsequent events or prior circumstances. *Perez v. Staples Cont. & Com. LLC,* 31 F.4th 560, 567 (2022).

## II.    Abstention Doctrine

The Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act requires that an actual controversy exists between the parties, but if all jurisdictional prerequisites are satisfied, it gives district courts broad discretion in deciding whether to exercise its authority. *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995); *see also Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (stating that district courts "possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims"). The permissive language of the statute confers discretion on courts rather than creating an absolute right for litigants. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). This discretion led to the creation of the

*Wilton-Brillhart* doctrine. *See Arnold v. KJD Real Est., LLC*, 752 F.3d 700, 707 (7th Cir. 2014) ("*Wilton-Brillhart* abstention is possible because of the federal court's unique and substantial discretion in deciding whether to declare the rights of litigants.") (citation modified).

*Wilton-Brillhart* abstention applies "when a federal court is called upon to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Id.* (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)) (citation modified). Under the doctrine, a district court is permitted to—but not required to—abstain in cases where "solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare, Inc.*, 604 F.3d at 986. The doctrine is rooted in many considerations, including federalism, comity, efficiency, and fairness. *See id.*; *Nationwide Ins.*, 52 F.3d at 692.

The classic example of when courts abstain under the *Wilton-Brillhart* doctrine is where there is a federal case seeking only declaratory relief and a state case involving "the same parties" and litigating "the same issues." *Envision Healthcare, Inc.*, 604 F.3d at 986. However, "the mere pendency of another suit is not enough in itself to refuse a declaration." *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 590 (7th Cir. 1970). Determining whether to abstain under the *Wilton-Brillhart* doctrine is "an inherently discretionary call for the district court, 'because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the

case for resolution, are peculiarly within [its] grasp.'" *Arnold*, 752 F.3d at 707 (quoting

*Wilton*, 515 U.S. at 288).

When determining whether to abstain from exercising jurisdiction over a

declaratory judgment action, district courts must consider several factors derived

from *Brillhart*:

> "(a) the scope of the pending state court proceeding and the nature
> of defenses open there,
> (b) whether the claims of all parties in interest can satisfactorily
> be adjudicated in that proceeding,
> (c) whether necessary parties have been joined,
> (d) whether such parties are amenable to process in that
> proceeding, and
> (e) whether going forward with the declaratory action will serve a
> useful purpose in clarifying the legal obligations and
> relationships among the parties or will merely amount to
> duplicative and piecemeal litigation."

316 U.S. at 495; *Nationwide Ins.*, 52 F.3d at 692. Other relevant considerations

are "whether the declaratory remedy is being used merely for the purpose of

'procedural fencing' or 'to provide an arena for a race for res judicata'" and "whether

the use of a declaratory action would increase friction between our federal and state

courts and improperly encroach on state jurisdiction." *NUCOR Corp. v. Aceros Y

Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (quoting

*Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991)).

Importantly, "the mere pendency of another suit is not enough in itself to refuse a

declaration." *Sears, Roebuck & Co.*, 422 F.2d at 590.

Analysis

## I.  Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1)

Defendants Douglas, the Francos, the Porters, and CGH challenge this Court's subject matter jurisdiction on the ground that complete diversity does not exist. (*See* Docs. 28, 34) The parties agree, as does this Court, that all Defendants are citizens of Illinois and that the amount in controversy exceeds $75,000, exclusive of interest and costs.[1] (Doc. 28, p. 6). The sole dispute regarding citizenship of the parties concerns whether PracticeProtection is sufficiently diverse from all Defendants, such that this matter may be heard by this Court. We first begin with the time-of-filing rule. "The time-of-filing rule measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing regardless of when raised." *Rodas v. Seidlin*, 656 F.3d 610, 623 (7th Cir. 2011) (citing *Grupo Dataflux*, 541 U.S. at 570–71) (citation modified). Accordingly, this Court is concerned with the citizenship of the parties as of the date that PracticeProtection filed the instant lawsuit in this Court: April 30, 2025. (Doc. 1).

In her Motion, Defendant Douglas (joined by the remaining Defendants the Francos, the Porters, and CGH) argues that PracticeProtection is not diverse from all Defendants because it, too, is a citizen of the State of Illinois. (Doc. 28, p. 2). Douglas argues that in a 2021 filing with the State of Florida, Plaintiff indicated it was

---

[1] Douglas alleges in her underlying St. Clair County Complaint that she is a resident of Illinois. (*See* Doc. 28, Ex., 1). In her Motion to Dismiss, which the Francos and the Porters joined by Motion, Douglas further states that "[t]here is no dispute that all named Defendants are citizens of Illinois." (*See id.*, p. 6). Further, Douglas' Motion states there is no dispute that the amount in controversy in the action exceeds $75,000. (*See id.*).

incorporated under the laws of the State of Illinois, with its principal office in Oak Park, Illinois; further, Plaintiff asserted the same information in three subsequent filings in the State of Florida in 2022, 2023, and 2024. (Doc. 28, pp. 4, 6; *id.*, Exs. 9–12). Nonetheless, Defendants argue that Plaintiff's website, as of June 2025 (the date on which Douglas filed her Motion), Plaintiff's website states its main office is in Oak Park, Illinois.[2] (Doc. 28, p. 7). Douglas asserts, without any accompanying evidence, that several of the states in which Plaintiff has a license to issue insurance lists Plaintiff as an Illinois corporation with a business or home office address of an Oak Park, Illinois, address. (Doc. 29, p. 7). Defendants also point to filings with the National Association of Insurance Commissions, a "database used to track licensed insurance providers for several of the States where Doctors Direct is licensed," which purportedly state that Plaintiff maintains a business and a statutory home office address at a location in Oak Park, Illinois. (Doc. 28, p. 4; *id.*, Exs. 15–16). Defendants acknowledge that Plaintiff's "most recent filings with the State of Florida state that its principal place of business" is in Jacksonville, Florida, but argues that "it is insufficient for a corporate entity to change its principal place of business just by filing new paperwork—the nerve center of the corporation must actually move." (Doc. 28, p. 7).

In its Response, PracticeProtection asserts that on December 6, 2024, the company filed its articles of incorporation under Florida law and, as a result, became a citizen of Florida. (Doc. 38, p. 4). In addition, PracticeProtection asserts that as of

---

[2] In support of this, Douglas attaches a purported screenshot of Doctors Direct Insurance website indicating an Oak Park, Illinois, address on the site's "Contact Us" page. (Doc. 28, Ex. 14).

April 30, 2025, its corporate headquarters were located in Jacksonville, Florida. (*Id.*). As such, Plaintiff PracticeProtection asserts it is only a citizen of the State of Florida as of the date of filing this suit.

The evidence presented by the parties establishes the following. Plaintiff PracticeProtection was initially incorporated as Doctors Direct Insurance, Inc., in the State of Illinois on or about July or August 2006. (*See* Doc. 28, Ex. 9; Doc. 38, Ex. 3; *see also* Doc. 38, Ex. 1, ¶ 4). In August 2024, Doctors Direct applied to re-domesticate and become an insurance company incorporated under the laws of the State of Florida under the new name PracticeProtection Casualty Company. (Doc. 38, Ex. 1, ¶5; *id.*, Ex. 2). On December 6, 2024, both the Florida Department of State and the Florida Office of Insurance Regulation approved the re-domestication. (Doc 38, Ex. 1, ¶ 6; *id.*, Ex. 3). On December 18, 2024, the Illinois Department of Insurance issued an Amended Certificate of Authority, effective December 6, 2024, recognizing the re-domestication to Florida and the name change. (Doc 38, Ex. 1, ¶ 8; *id.*, Exs. 6–7). Defendants do not dispute that Plaintiff re-domesticated under the laws of the State of Florida on December 6, 2024. (*See* Doc. 28, p. 4). Accordingly, this Court finds that as of April 30, 2025, PracticeProtection was incorporated under the laws of the State of Florida. Therefore, for purposes of diversity jurisdiction, PracticeProtection is a citizen of Florida.

The inquiry does not stop there; this Court must also examine the location of PracticeProtection's headquarters; or where its principal place of business was located as of April 30, 2025. Under Supreme Court precedent established in *Hertz*,

the principal place of business is the corporation's "nerve center"—the place where its high-level officers direct, control, and coordinate corporate activities. *See* 559 U.S. at 92−93. Defendants argue that the continued use of both addresses by Plaintiff "raises an inference that the [Oak Park, Illinois,] address continues to function as the 'nerve center' of the corporation," while "the fact that the company previously used the [Jacksonville, Florida,] address as the business address of a single director/registered agent raises the inference that it continues to function as, at most, a meeting place of certain specific directors, and not the 'nerve' center of the corporation." (Doc. 28, p. 7).

In Response, Plaintiff argues that as of April 30, 2025, its principal place of business was located in the State of Florida. (Doc 38, p. 7). Plaintiff puts forth evidence that, as of it filing with the Secretary of State for the State of Florida on February 10, 2025, its principal place of business was in Jacksonville, Florida, where it remained as of the date of filing suit on April 30, 2025. (*Id.*, p. 8; *see id.*, Ex. 2). Moreover, Plaintiff argues, its headquarters in Jacksonville, Florida, is the location at which its corporate officers run the company and make decisions to direct, control, and coordinate PracticeProtection's business activities. (*Id.*; *see id.*, Ex. 1, ¶¶ 11–13). PracticeProtection's Executive Vice President and General Counsel, William Saunders Bliss, testified in an affidavit submitted with PracticeProtection's Response that as of April 30, 2025, none of PracticeProtection's corporate officers were located in Illinois. (*Id.*, Ex. 1, ¶ 12). More specifically, Bliss testified that three of five of the company's corporate officers were located in and worked out of the company's

Jacksonville, Florida, headquarters, while the Chief Financial Officers primarily worked remotely from his home in Florida, and the Vice President of Claims worked remotely from his home in Indiana.[3] (*Id.*, Ex. 1, ¶ 11). Bliss additionally testified that, as of April 30, 2025: all managerial decisions made by corporate officers were made out of the company's Jacksonville, Florida, headquarters; the company conducted all of its underwriting, claims, marketing, accounting, and finance operations, and issued all insurance policies and renewals out of its Jacksonville, Florida, headquarters; and the company's physical files were all located at its Jacksonville, Florida, headquarters. (*Id.*, Ex. 1 ¶¶ 13−16).

The Court finds that the evidence presented in the Motion to Dismiss and Plaintiff's Response indicate that, on the day Plaintiff filed suit in this Court, its "nerve center" was located in Florida. Defendants' arguments that this Court should *infer* the location of Plaintiff's headquarters, without concrete factual support, and reliance on where Plaintiff was headquartered *in the past* do nothing to establish where Plaintiff's corporate officers conducted day-to-day business and made decisions on April 30, 2025. Defendants' argument that PracticeProtection's website lists an Illinois address as the company's Main Office is irrelevant evidence under *Hertz*: the Supreme Court expressly held that public perception does not determine a corporation's principal place of business. (*See* Doc. 28, Ex. 14); *Hertz*, 559 U.S. at 96

---

[3] The Court notes that attached to Defendant Douglas' Motion to Dismiss were filings by Plaintiff in the State of Florida in the years 2021−24, which listed the names and address of the company's directors and officers. (Doc. 28, p. 4; *id.*, Exs. 9−12). In 2022 and 2023, it appears the company had seven corporate directors/officers, with two located in Florida, two in Indiana, and three in Illinois. (Doc. 28, Exs. 10−11). In 2024, it appears the company had eight corporate officers/directors, with two located in Florida, four located in Illinois, and two in Indiana. (Doc. 28, Ex. 12).

("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."). Evidence regarding Plaintiff's headquarters or purported place of business prior to April 30, 2025, also does not bear on the relevant question of where Plaintiff was headquartered on the date it filed this suit.  The *Hertz* inquiry looks to where corporate officers actually direct, control, and coordinate activities on behalf of the business, not to whether every filing in every jurisdiction has been updated. *See* 559 U.S. at 92−93, 96. This Court finds that Plaintiff's Executive Vice President and General Counsel presents credible testimony in his sworn affidavit that PracticeProtection, as of April 30, 2025, issued insurance policies and renewals from its Jacksonville, Florida, location, and that this location was also where managerial decisions were made by officers, business such as underwriting, claims, marketing, accounting, and finance operations was conducted, and where its physical files were located. (Doc. 38, Ex. 1).

Accordingly, this Court finds that, for purposes of diversity jurisdiction, PracticeProtection was incorporated under the laws of the State of Florida and was headquartered in Florida on the date it filed suit in this Court, thereby making it a citizen only of the State of Florida. As Defendants are all residents of the State of Illinois, this Court finds that complete diversity exists amongst the parties, such that this Court has subject matter jurisdiction under 28 U.S.C. § 1332 to hear this case.

In the alternative, Douglas argues that PracticeProtection was undisputedly a citizen of Illinois on September 6, 2023, the date which this Court should consider

operative because it was on that date that PracticeProtection incurred the obligation to file the instant declaratory judgment action. (Doc. 28, pp. 2, 7–8). Under the Illinois doctrine of estoppel, Douglas argues, an insurance company that issued a policy that allegedly provided coverage for a legal complaint must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. (*Id.*, pp. 7–8 (citing *Emps. Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134–35 (Ill. 1999). Douglas argues that PracticeProtection provided legal defense to the defendants she named in her underlying St. Clair County medical malpractice suit until counsel for those defendants withdrew on September 6, 2023. (*Id.*, p. 8). On that date, Douglas asserts, when PracticeProtection stopped defending the underlying suit under a reservation of rights, it had an obligation to seek a declaratory judgment on the issue of coverage. (*Id.*). As such, Douglas maintains, this Court should consider Plaintiff PracticeProtection's citizenship as of that date, the day the obligation to sue arose, which was "undisputedly Illinois." (*Id.*).

This Court notes that Defendant Douglas fails to cite any case law supporting her position that this Court should disregard the time-of-filing rule in favor of using the date at which she alleges Plaintiff's obligation to sue arose. The one case that Defendant does cite, *Employers Insurance of Wausau*, provides that the estoppel doctrine applies only where an insurer has breached its duty to defend, and in that instance, operates to bar the insurer from raising policy defenses to coverage. *See* 708 N.E.2d at 1135. *Employers Insurance of Wausau* provides no basis for this Court to deviate from well-settled precedent announced by the Supreme Court that "all

challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing." *Grupo Dataflux*, 541 U.S. at 571. PracticeProtection filed this lawsuit on April 30, 2025, and according to the citizenship of the parties on that date, this Court has jurisdiction over the matter. As such, this Court's finding that complete diversity exists is not altered by this argument.

## II. Motion to Dismiss based on *Wilton-Brillhart* Abstention

Defendant Center for Gastrointestinal Health additionally filed a separate Motion to Dismiss, arguing that this Court should decline to exercise jurisdiction pursuant to the *Brillhart* abstention doctrine. (Doc. 34). CGH argues that abstention is warranted here because they filed a lawsuit in the Circuit Court for St. Louis County, Missouri on February 11, 2025, that is duplicative of the proceedings before this Court such that this Court should abstain from issuing a declaratory judgment the matter. (*See id.*, pp. 1–2). Specifically, CGH states that abstention is appropriate here because: (1) the suit they filed in St. Louis County seeks damages for breach of the very same insurance contract and coverage as the present suit before this Court; (2) CGH and PracticeProtection are parties to both suits, (3) the issue of whether PracticeProtection is obligated to defend and indemnify the underlying medical malpractice suits is present in both suits; and (4) PracticeProtection can obtain comparable relief in the St. Louis County case as they can in the present case. (Doc. 34, pp. 3–4). In Response, PracticeProtection argues that abstention is not warranted because the Missouri lawsuit does not include all the necessary parties, such that

there is no parallel proceeding justifying this Court's declination to exercise its jurisdiction. (Doc. 39, p. 1). Plaintiff states that CGH seeks a determination of PracticeProtection's coverage obligations with respect to the three underlying St. Clair County medical malpractice suits but has failed to include the five individual claimants (Douglas, the Porters, and the Francos) in that suit, such that the parties are not substantially the same for purposes of the *Brillhart* abstention doctrine. (*See id.*, p. 2).

Defendant CGH filed a Petition in St. Louis County Circuit Court on February 11, 2025, naming the Hilb Group Central, LLC and Doctors Direct Insurance, Inc. (PracticeProtection) as Defendants. (Doc. 34, Ex. 1). CGH's first claim is against the Hilb Group Central, LLC, which CGH alleges is a Missouri limited liability company that operates an insurance brokerage business. (*See id.*). CGH alleges that the Hilb Group Central, LLC, breached its fiduciary duties of loyalty, care, and prudence to CGH by failing to obtain appropriate coverage for its staff, failing to warn and advise CGH of a potential coverage gap, failing to include Dr. Kurt Sprunger as a covered employee, and failing to ensure the coverage provided by Doctors Direct/PracticeProtection was identical to its previous policy. (*Id.*, Ex. 1, p. 7). CGH seeks money damages in excess of $25,000 from the Hilb Group. (*Id.*, Ex. 1, p. 8). CGH's Missouri Petition further states that Counts II and III, which are brought against Doctors Direct/PracticeProtection, "are pleaded hypothetically and in the alternative to Count I." (*Id.*). CGH alleges that Doctors Direct/PracticeProtection breached its contract with CGH to insure, cover, indemnify, and/or defend the St.

Clair County medical malpractice lawsuits (Count II), and seeks money damages in the amount of $25,000, attorney fees and costs, and a finding that PracticeProtection breached its contract with CGH. (*Id.*, Ex. 1, pp. 8−9). CGH further alleges that PracticeProtection violated MO. REV. STAT. §§ 375.296 and 375.240 by vexatiously refusing to pay insurance benefits (Count III). (*Id.*, Ex. 1, p. 9).

As both parties note, Veronica Douglas, Vickie and Efrain Franco, and Robert and Melissa Porter are not named parties to the Missouri lawsuit. (*See* Doc. 34, p. 4; Doc. 39, p. 6). Defendant CGH, in its Motion to Dismiss, argues that abstention is still appropriate here because they are not necessary parties to the Missouri suit. (Doc. 34, p. 4). The individual Defendants, CGH argues, have a mere expectancy or future contingent interest by manner of their allegations in their underlying medical malpractice claims, and thus, are not required to be joined by law. (*Id.*). Plaintiff Practice Protection argues in opposition to the Motion to Dismiss that underlying claimants are indeed necessary parties to litigation regarding insurance coverage, and because they are not parties in St. Louis County, not all interests are satisfactorily adjudicated in the state court proceeding. (Doc. 39, pp. 7−8). Accordingly, PracticeProtection argues, abstaining from the present matter is not appropriate because the parallel suits are not substantially the same. (*See id.*).

"[T]he *Wilton/Brillhart* abstention doctrine appropriately applies in a diversity case where a declaratory judgment is sought and a parallel state proceeding also exists." *Envision Healthcare, Inc.*, 604 F.3d at 986 (citing *Wilton,* 515 U.S. at 283; *Provident Tradesmens Bk. & Tr. Co. v. Patterson*, 390 U.S. 102, 126 (1968)). A

threshold requirement for *Wilton-Brillhart* abstention is the existence of parallel proceedings. "Two actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Envision Healthcare, Inc.*, 604 F.3d at 986 (citing *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996)). The district court's inquiry should focus on "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Hartford Fire Ins. Co. v. Williams Bros. Constr., Inc.*, 149 F. Supp. 3d 1009, 1012 (C.D. Ill. 2016) (citing *Brillhart*, 316 U.S. at 495). Relevant factors include:

> (a) The scope of the pending state court proceeding and the nature of the defenses there,
> (b) Whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding,
> (c) Whether necessary parties have been joined,
> (d) Whether such parties are amenable to process in that proceeding, and
> (e) Whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation.

*Id.* (citing *Brillhart*, 316 U.S. at 495; *Nationwide Ins.*, 52 F.3d at 692).

In *Hartford Fire*, the Central District of Illinois analyzed the factors enumerated in *Brillhart* to determine abstention from a declaratory action brought by an insurance provider was appropriate where there was a parallel state court proceeding. *See* 149 F. Supp. 3d at 1014. In that matter, Hartford Fire Insurance Company ("Hartford Fire") brought a declaratory action against Defendants Williams Brothers Construction Company, Inc. ("Williams Brothers"), The Pipco Companies,

Ltd. ("Pipco"), Bituminous Casualty Corporation n/k/a Bitco General Insurance Corporation ("Bitco"), and James Goff. *Id.* at 1010−11. Williams Brothers was a general contractor who contracted with Pipco in working on repairing a building in Urbana, Illinois. *Id.* at 1011. James Goff was an employee for Pipco who was injured when he slipped on ice while on the job. *Id.* Goff sued Williams Brothers in the Circuit Court of Champaign County in November 2014 seeking damages for his injuries on the theory of Williams Brothers' negligence (hereinafter referred to as the "Underlying State Tort Claim"). *Id.* In August 2015, Williams Brothers filed a declaratory judgment action in the Circuit Court for Madison County, Illinois, against Hartford Fire Insurance Company, Pipco, and Goff (hereinafter referred to as the "State Declaratory Action"); Williams Brothers sought a declaration that Hartford had a duty to defend and indemnify Williams Brothers under an insurance policy for injuries claimed by Goff in the Underlying State Tort Claim lawsuit. *Id.* Two months later, in October 2015, Hartford filed a declaratory judgment action in the Central District of Illinois against Williams Brothers, Pipco, Goff, and Bitco, seeking a declaration that it did not have a duty to defend and indemnify Williams Brothers (hereinafter referred to as the "Federal Declaratory Action"). *Id.* Bitco, Williams Brothers' insurer, was not a party to the Underlying State Tort Claim suit brought by the injured employee nor to the State Declaratory Action; Hartford Fire had joined Bitco in the Federal Declaratory Action litigation "solely as an interested party to be bound by the judgment herein." *Id.* at 1013.

The Central District began its analysis under *Brillhart* by determining whether the State Declaratory Action and the Federal Declaratory Action in *Hartford Fire* were parallel proceedings. *Id.* at 1012. First, the court found that the issue in both matters was the same, namely, whether Hartford Fire owed a duty to defend and indemnify Williams Brothers in the Underlying State Tort Claim litigation. *Id.* The court found that resolution of that question by the Circuit Court for Madison County in the State Declaratory Action would resolve the present federal claim before the Central District. *Id.* Hartford Fire, in opposition to abstention, argued that because Bitco, Williams Brothers' insurer, was not a party to the State Declaratory Action, the two proceedings were not, in fact, parallel. *Id.* at 1013. The Central District clarified that while indeed no claims were brought against Bitco in state court, no claims were brought against Bitco in federal court, either—they were present in the federal action for purposes of Hartford Fire's desire for Bitco to be bound by the federal judgment. *Id.* The court further concluded that the fact that Bitco was not a party to the State Declaratory Action did not determine the outcome of the court's analysis of the two proceedings because Bitco's presence or absence would not change the "'the substantial likelihood that the state court litigation will dispose of all claims presented in the federal case.'" *Id.* (quoting *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010)). In addition, the Central District found that the Circuit Court for Madison County could satisfactorily adjudicate the declaratory judgment action and determine Hartford Fire's coverage obligations to Williams Brothers with or without Bitco's presence in the suit. *Id.*

As to the other *Brillhart* factors, including whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, and whether necessary parties have been joined, the Central District found these factors additionally favored abstention. *See id.* at 1013. First, the Central District emphasized that Hartford Fire, in opposing abstention, did not argue that Bitco could not be brought into the State Declaratory Action by means available under the Illinois Rules of Civil Procedure, nor had it asserted it had made attempts to bring in Bitco to that action.[4] *Id.* Second, the court stated that under Illinois law, a party is necessary in a suit when its presence is required to (1) protect an interest which the absentee has in the subject matter which would be materially affected by a judgment entered in their absence; (2) reach a decision which will protect the interests of those who are before the court; or (3) enable the court to make a complete determination of the controversy. *Id.* (citing *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577 (Ill. 2009)). Thus, the Central District reasoned that "if Bitco has an interest that would be affected by its absence, it could intervene; if Hartford [Fire] feels that joining Bitco would protect its interest, Hartford [Fire] could join Bitco as a defendant; and if the court finds that Bitco is necessary in order to make a complete determination, the court may join them to the suit." *Id.* Third, the Central District stated that Bitco may not have been a necessary party to the State Declaratory Action because the interests

---

[4] For instance, the Central District stated that the Circuit Court for Madison County could potentially direct a party to be brought into the action if a complete determination of a controversy cannot be had without them at any stage of the cause under 735 ILL. COMP. STAT. 5/2−406 and 5/2−407; a defendant could file a third-party complaint either within the time for filing an answer or by leave of court to bring a party to the action under 735 ILL. COMP. STAT. 5/2−406(b)); or Bitco could choose to intervene in the action under 735 ILL. COMP. STAT. 5/2−408.

of Bitco and Williams Brothers, its insured, were the same in that action: for Hartford Fire to be found liable for insurance obligations to Williams Brothers with respect to the Underlying State Tort Claim litigation. *Id.* at 1014. As to the *Brillhart* factor of whether the parties were amendable to the process in the state court proceeding, the Central District noted that Hartford Fire also failed to argue that the state court lacked jurisdiction over Bitco. *Id.* Finally, the Central District stated that it was in no better position than the Circuit Court for Madison County to clarify the legal obligations and relationships among the parties and, based on its analysis, concluded that abstention was appropriate and dismissed the action. *Id.* at 1014−15.

Turning to the present matter, the legal question presented in the matter Plaintiff PracticeProtection has brought before this Court is whether PracticeProtection is obligated to defend and indemnify Center for Gastrointestinal Health with respect to the underlying St. Clair County medical malpractice lawsuits, which is also an issue presented before the Circuit Court for St. Louis County, Missouri, in Counts II and III of the Petition brought there by CGH. In accordance with the Central District's reasoning, whether the underlying St. Clair County plaintiffs are part of that suit does not change the "'the substantial likelihood that the state court litigation will dispose of all claims presented in the federal case.'" *Hartford Fire* at 1013 (quoting *Envision Healthcare, Inc.*, 604 F.3d at 986). In addition, both CGH and PracticeProtection are parties to the St. Louis County litigation as well as the instant litigation. Accordingly, this Court finds that the two actions are parallel.

As to the factors of whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, and whether the parties are amenable to process in the state court proceeding, the analysis is not as straightforward. As an initial matter, in the St. Louis County lawsuit, CGH, an Illinois citizen, has haled the Hilb Group Central, LLC (a Missouri citizen), and PracticeProtection (potentially an Illinois or a Florida citizen, depending on the application of Missouri law) into Missouri Court. CGH's first claim is a Missouri common law claim for breach of fiduciary duty against the Hilb Group Central, LLC, its insurance broker. (Doc. 34, Ex. 1, pp. 5−7). Count II is a breach of contract claim by CGH against PracticeProtection, which PracticeProtection asserts is governed by Illinois law per a choice of law provision in the insurance agreement. (*Id.*, Ex. 1, pp. 8−9; Doc. 39, p. 7, n.1). CGH seeks damages in excess of $25,000 and a finding that PracticeProtection breached its insurance agreement. (*Id.*). And, in Count III, CGH brings a claim for vexatious refusal to pay against PracticeProtection under MO. REV. STAT. §§ 375.296 and 375.240. (*Id.*, Ex. 1, p. 9). As to the breach of contract claim in which PracticeProtections' obligation to defend and indemnify CGH would be determined, it is not immediately clear to this Court which state's law the Missouri Circuit Court will apply under its choice of law analysis or whether it would determine the choice of law provision to be binding. The Court finds that this uncertainty supports keeping the action in federal court under the *Wilton-Brillhart* analysis.

As to the *Brillhart* factor of whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, PracticeProtection claims that the underlying tort claimants cannot be brought into the Missouri action because they are not amenable to process in that court, which differentiates this case from *Hartford Fire*. For example, upon a reading of Missouri's long-arm statute,[5] it is not immediately clear to this Court whether the Francos, the Porters, or Douglas are amenable to process in Missouri courts. CGH has not argued in its Motion to Dismiss that the individual defendants are amenable to process in Missouri. The Court finds that this uncertainty additionally supports keeping the action in federal court.

PracticeProtection also argues in opposition to dismissal that the Francos, the Porters, and Douglas are necessary parties to the Missouri action. The individual Defendants, CGH argues, have a mere expectancy or future contingent interest by manner of their allegations in their underlying medical malpractice claims, and thus, are not required to be joined by law. (Doc. 38). However, this argument is not consistent with Illinois law, which states that the tort claimant is a necessary party

---

[5] Missouri's long-arm statute provides:

"Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

    (1)    The transaction of any business within this state;
    (2)    The making of any contract within this state;
    (3)    The commission of a tortious act within this state;
    (4)    The ownership, use, or possession of any real estate situated in this state;
    (5)    The contracting to insure any person, property or risk located within this state at the time of contracting;
    (6)    Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

MO. REV. STAT. 506.500.1.

to a suit to determine coverage. *See Great West Gas. Co. v. Mayorga*, 342 F.3d 816, 817 (7th Cir. 2003) (interpreting Illinois law). Moreover, CGH does not argue that it is in a position to adequately represent the interests of the Francos, the Porters, or Douglas in the Missouri action. CGH and the underlying tort claimants are not in privity of contract such that their interests are identical; they are, in fact, opposing parties in the underlying St. Clair County litigation in which they seek to hold CGH liable for injuries sustained while in care at their facility. Thus, unlike in the *Hartford Fire* case, in which the Central District concluded that the absent party may not have been a necessary party because its interests were adequately represented by another party in the action, the Court cannot readily reach the same conclusion here. In light of this, under the *Wilton-Brillhart* analysis, the Court finds that this factor, too, favors keeping the action in federal court.

Accordingly, based on the foregoing analysis, the Court finds that abstention pursuant to the *Wilton-Brillhart* doctrine is not appropriate in this matter due to the complex procedural nature and the interests at stake. This Court, in exercising its discretion under the Declaratory Judgment Act, finds that reaching a judgment on the merits of this matter is warranted and will not abstain from reaching the merits of the matter despite parallel state court proceedings.

## CONCLUSION

For the reasons set forth above, Defendant Veronica Douglas's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 28) is **DENIED**, and Defendant

Center for Gastrointestinal Health, S.C.'s Motion to Dismiss Based on *Brillhart*

Abstention (Doc. 34) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  January 7, 2026**

<u>**s/ *Stephen P. McGlynn***</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**